UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:06-0175 |
| | ) | Judge Echols |
| SUSAN ANN SPERL, aka SUSAN ANN BOYER; RANDALL E. THOMPSON; and SUSANTAX, INC., | ) | |
| Defendants. | ) | |

## MEMORANDUM

This is a civil action brought by the United States seeking a permanent injunction against the Defendants Susan Ann Sperl ("Sperl"), her son, Randall E. Thompson ("Thompson") and Susantax, Inc. under the Internal Revenue Code. Pending before the Court is Plaintiff's Motion for Summary Judgment and Permanent Injunction against Defendants Sperl and Thompson and Motion for Default Judgment and Permanent Injunction against Defendant Susantax, Inc. (Docket Entry No. 70). Sperl and Thompson, proceeding pro se responded in opposition (Docket Entry No. 79), and Plaintiff filed a Reply (Docket Entry No. 82). Plaintiff's dispositive Motion was referred to the Magistrate Judge for a Report and Recommendation ("R & R") and the Magistrate Judge has entered a R & R (Docket Entry No. 87) recommending that the Government's Motion for Summary Judgment be granted and that Sperl and Thompson be permanently enjoined from (1) acting as act tax return preparers, (2) representing anyone before the IRS, (3) organizing or selling Susantax Membership Program (or any similar program), and (4) engaging in any conduct subject to penalty under the Internal Revenue Code or any conduct which interferes with the enforcement of the internal revenue laws.

1

In addition to this action, however, a criminal case styled United States v. Sperl *et. al.*, Case No. 3:07-00078 is pending in this Court against Defendant Sperl before Judge Trauger which alleges that Sperl and others engaged in tax fraud. While the Government ultimately seeks judgment and a permanent injunction against all Defendants in this case, the Court is now concerned with whether a final judgment and permanent injunction should issue against any of the Defendants while the criminal case is proceeding.

In support of its request for a permanent injunction and its motion for summary judgment (Docket Entry No. 70), the Government has submitted numerous sworn declarations. Defendants have responded in opposition to the Motion for Summary Judgment by making various denials and counter-arguments, but they have provided no competent evidence to contradict all the factual statements made and conclusions drawn in the declarations.

To supplement the documentary evidence submitted to the Court and to allow the parties an opportunity to present additional evidence regarding the Government's request for summary judgment and injunctive relief, the Court held an evidentiary hearing on the requested injunction on June 5, 2008. During the evidentiary hearing, the Government submitted additional declarations with accompanying exhibits, and Defendant Sperl testified on her own behalf.[1] Defendant Randall E. Thompson did not attend the hearing. Defendant Susantax is not represented by counsel and no one representing Susantax appeared at the hearing. On March 4, 2007, the Clerk of the Court entered a default against Susantax (Docket Entry No. 37) because that Defendant failed to answer or otherwise respond to Plaintiff's Complaint in accordance with the Federal Rules of Civil Procedure and

---

[1] David R. Heroux, who represents Defendant Sperl in her criminal case, attended the hearing and privately counseled Defendant Sperl before she took the stand on her own behalf.

Defendant Sperl testified at the evidentiary hearing that Susantax is no longer in business and has been dissolved.

## I. FACTS

Based upon the evidence before the Court, the Court finds that the facts contained in the Magistrate Judge's R & R are true, along with the following: Sperl has prepared federal tax returns for others and represented others before the Internal Revenue Service ("IRS") since 1978, and continues to do so. Thompson prepared federal tax returns for others from February 2004 to October 2005, excluding the summer of 2004.[2]

Defendants Thompson and Sperl prepared tax returns at locations in Kingston Springs, Tennessee and Temecula, California and received compensation for the preparation of tax returns. Those Defendants operated through Defendant Susanstax and other entities in the preparation of federal income tax returns for customers.

The record is replete with evidence that the individual Defendants, independently and in conjunction with each other, undertook a scheme to create or inflate deductions and expenses in an effort to secure larger refunds for their taxpayer customers. Several examples show the nature and extent of Defendants' conduct which was aimed at assisting customers in paying substantially less taxes than were due.

Sperl prepared the 2003 tax return for customer Terry Bennett ("Bennett"), and Thompson prepared Bennett's 2004 return. On both returns, the ministry income and expenses reported to Sperl and Thompson by Bennett were materially understated and the returns improperly claimed an earned income tax credit to which Bennett was not entitled. For tax year 2003, Bennett told Sperl he received

---

[2]Thompson returned to his trade as an electrician in October 2005, a full tax season after the IRS notified Sperl it was investigating Sperl's tax-return business in December 2004.

about $86,000 from his ministry, but the income tax return prepared by Sperl listed only $14,200. For tax year 2004, Bennett indicated that he earned $58,000 in income from his ministry, but the tax return prepared by Thompson showed an income of only $18,230. When the IRS challenged Bennett's returns, Sperl agreed to appear on his behalf before the IRS, but then failed to show up. The IRS determined that Bennett owed an additional $28,000, including interest and penalties, for tax years 2003 and 2004.

On another occasion, Sperl was contacted by Michael Ray ("Ray") who operated Tender Loving Nurses, a Houston, Texas based partnership which sold nursing services to hospitals. Ray asked Sperl how he could reduce his tax liability, to which Sperl responded that he could write checks to her for accounting services and then she would give him a receipt and loan the money back to him. Sperl told Ray he could then claim the funds given to her as a legitimate tax deduction. After performing calculations, Sperl told Ray that he needed $240,000 in additional deductions to reduce his 2000 tax liability to zero. Thereafter, on November 20, 2000, Ray wrote a check in the amount of $140,000 payable to Susan Sperl and noted in the memo section of the check "Legal & Accounting Fees." Sperl then used this check to purchase a cashier's check payable to Tender Loving Nurses and placed on the notation line "Susan Sperl Bank Loan" which was subsequently deposited in the Tender Loving Nurses' checking account. Two days later, Ray wrote a check for $100,000 payable to Susan Sperl for "Legal & Accounting Fees." Sperl then gave Ray three sequentially numbered checks made payable to Tender Loving Nurses and marked the checks as being for an "Investment Loan." Through her checks, Sperl returned all but $1,000 that Ray had paid to her.

On his 2000 U.S. Return of Partnership Income, Ray claimed "retirement plan" deduction in the amount of $240,000. The Government lost $83,339 in taxes due to the false $240,000 deduction. Ray was charged in a three-count Indictment with conspiracy to violate the tax laws of the United

4

States, presenting a false tax return, and aiding and abetting the making of a false return. He pled guilty to the conspiracy charge and is awaiting sentencing.

Sperl also prepared income taxes for Jessica Kirmer ("Kirmer") and her husband for the 2003 and 2004 tax years. At the time, Kirmer's husband was a police officer and Kirmer worked almost full time for Blockbuster, auditing paperwork in her home. She also spent approximately 5 hours per week helping her mother who was a realtor. Kirmer's work for her mother was unpaid, although her mother would occasionally pay Kirmer some money to buy groceries. Blockbuster paid Kirmer for home office expenses, such as telephone costs. Nevertheless, Kirmer claims that Sperl included many inappropriate entries on the Kirmers' tax forms, including excessive bank charges and phone expenses. The amounts for such expenses were not provided by Kirmer, but instead were made up by Sperl. Kirmer claims that Sperl told her the Kirmers could deduct any money they spent on their horse, even though the horse was used for recreational purposes. Ultimately, the Kirmers were scheduled to go to tax court to explain their tax forms and Sperl allegedly advised the Kirmers that if they did not have receipts to back up their expenses or deductions, they should make something up and write it down. The Kirmers settled their dispute with the IRS by agreeing to pay $12,232.30.

Despite being indicted for alleged tax fraud in April 2007, Sperl has continued to engage in tax preparation and to offer tax advice. According to the evidence introduced at the evidentiary hearing, Sperl prepared taxes for James and Patricia Nitschke ("Nitschkes") in April 2008 for the tax years 2006 and 2007. Sperl did not sign those tax returns as a tax preparer, but instructed the Nitschkes to use the attached billing statement listing "Susan Voshelle" as the tax preparer as proof that the taxes were prepared by Sperl. Included in the material from Sperl was a "Price List" for Vision Tax Solutions which listed the price for completing various tax forms. After consulting with

5

Case 3:06-cv-00175  Document 111  Filed 06/30/08  Page 5 of 16 PageID #: 1479

counsel who was representing them in an anticipated bankruptcy, the Nitschkes chose not to file the taxes prepared by Sperl because they included inappropriate deductions and expenses.

Overall, the evidence shows that Defendants' preparation of income tax returns which contained fraudulent expenses and deductions was not isolated or sporadic, but instead was wide-ranging and involved many taxpayers. The IRS determined that 648 of the 791 tax returns prepared by Defendants for the 2002 and 2003 tax years reported deductions for purported business expenses. The IRS selected 68 of the 648 returns for examination and determined that all 68 returns contained tax understatements, primarily due to deductions related to false or fraudulent home-based business expenses and depreciation.

In addition to income tax return preparation, Sperl created and sold the SusanTax Membership Program ("Program"). That Program makes false statements with respect to the allowability of deductions, credits and tax benefits for participating in the program.

The Program solicited customers by stating that they can "convert [their] non deductibles to deductibles" and thereby create a "paper loss" that will reduce their overall tax liability, without spending more than a few hundred dollars for Defendants' services. (Docket Entry No. 4 ¶ 25; Docket Entry Nos. 4-3,-4 and -5). Defendants informed potential customers that through the Program they could "[l]earn how to legally deduct the money you are *already* spending in your home and for your children," such as vehicle expenses, furniture, equipment, telephones, and children's allowances. (Id.). Through the Program, Defendants asserted that personal and other household expenses, such as personal vehicle mileage, furniture, equipment, telephones, and paying children for services could be deducted as business expenses, without the qualification that (1) a home-based business have a business purpose and the intent to make a profit and (2) the business expenses be necessary and related to the business purpose.

6

Customers who bought a membership in the Program received record-keeping books, an audio cassette, computer software and a monthly newsletter containing tax tips and updates.[3] If customers used the Program to track expenses, Defendants prepared tax returns for those customers at a discounted rate.

In 2007, Sperl announced to customers that she would now operate her tax return preparation business as Vision Tax Solutions. Sperl sent out monthly Vision Tax Solutions newsletters, which replaced the Susantax Membership Program newsletters and she operated a tax-return-preparation business under the name Vision Tax Solutions.

The IRS has devoted significant resources to investigating the Defendants and their customers and to determine the customers' correct tax liabilities. Thus far, the IRS has spent 3,321.5 man hours in completing audits for the 2003 and 2004 tax years alone. While the Government may not ever identify and recover all of the tax understatements caused by Defendants, the understatements of tax liability caused by Defendants and subordinates under their direction total at least $3,661,438 for the 2003 and 2004 tax years. Hundreds of Defendants' customers have been found to owe back taxes, along with interest and penalties.

At the evidentiary hearing, Sperl tried to explain away much of the evidence, claiming that the IRS was engaged in a conspiracy against her and her son and that she has only tried to help others stand up for their rights against a governmental agency who many view as worse than terrorists. When confronted with the list containing hundreds of names for whom the Defendants allegedly prepared taxes which contained improper deductions and/or expenses, Sperl identified a handful of

---

[3]Thompson helped prepare the monthly newsletters relating to the Program during his tenure at Susantax. Those newsletters contain tax advice and updates and contrast the Program with accountants and CPAs who purportedly tend not to keep abreast of the ever-changing tax laws.

7

individuals for whom she claims she did not prepare taxes. As for the others, Sperl asserted that she had no way of knowing whether she prepared their taxes since her computer had "crashed." She also claimed that inclusion of some of the individuals on the list was improper because either audits had not been completed, deficiency notices had not been issued, or appeals had not been exhausted.

With regard to the Nitschke returns, Sperl claims she was only trying to help the Nitschkes out because they were prior customers who were facing bankruptcy. Regardless, Sperl claims the returns are irrelevant because they are not valid returns since they are not signed or stamped as accepted by the IRS. Sperl also asserts that she did not send a price list for Vision Tax Solutions to the Nitschkes and that Vision Tax Solutions was dissolved by her in 2007 because the IRS was harassing its customers. While Sperl admits to sending an invoice from "Susan Voshelle" in the amount of $725.00, Sperl claims that she did not expect to be paid for her services because the Nitschkes intended to file for bankruptcy protection.

As for the general allegations of fraud in relation to expenses and deductions on tax forms prepared by Defendants, Sperl claims that Defendants merely inputted the information given to them by their customers and Defendants had no control over whether that information was accurate or what the customers chose to do with the tax returns once they were prepared. Sperl claims that she always advised her customers to be truthful with the IRS and not lie to the IRS about their income.

## II. APPLICATION OF LAW

As indicated at the outset, the Government seeks an injunction against the Defendants. However, prior to addressing that issue, the Court must preliminarily address the advisability of issuing any injunction given the pendency of the criminal case against Defendant Sperl.

8

**A. Parallel Civil and Criminal Proceedings**

During the pretrial conference which was held in this case on March 31, 2008, the Court expressed some concern about the possible collateral consequences and Fifth Amendment implications with proceeding to trial on April 8, 2008, where Defendant Sperl is proceeding pro se while a parallel criminal case alleging tax fraud is pending and set for trial this summer.[4] In response, the Government filed a "Brief Regarding Parallel Civil and Criminal Proceedings" (Docket Entry No. 103) in which the Government conceded some potential Fifth Amendment implications for Defendant Sperl, but argued that, at a minimum, an injunction should be issued which prohibits the offering of tax services and advice by the Defendants until this case is decided on the merits.

"The civil and regulatory laws of the United States frequently overlap with the criminal laws, creating the possibility of parallel civil and criminal proceedings, either successive or simultaneous." SEC v. Dresser Indus. Inc., 628 F.2d 1368, 1374 (D.C. Cir. 1980). It is not uncommon for proceedings involving alleged tax fraud to proceed simultaneously in both the civil and criminal arena because the IRS splits the responsibility for enforcing tax law between a criminal investigative division which investigates alleged criminal violations of the tax code and the civil examination division which conducts civil tax audits. United States v. Richardson, 2006 WL 2505930 at *2 (S.D. Ohio 2006).

"In the absence of prejudice to the parties involved, such parallel proceedings are unobjectionable under our jurisprudence," Dresser, 628 F.2d at 674 and the Supreme Court has held that the government may conduct parallel civil and criminal investigations without violating the due

---

[4]The criminal case has since been reset for the fall of this year with Counts Three through Nine to be tried beginning September 9, 2008, and Counts One and Two to be tried beginning October 28, 2008.

9

process clause, so long as it does not act in bad faith. United States v. Kordel, 279 U.S. 1, 11 (1970). Bad faith may be found where the government brings a civil action solely to obtain evidence for a criminal prosecution or fails to advise the defendant in the criminal proceeding that there may be a criminal prosecution. United States v. Nebel, 1994 WL 12647 at *2 (6th Cir. 1994)(citing, Kordel, 279 U.S. at 11-12).

A court has discretion to determine whether to stay civil litigation during the pendency of parallel criminal proceedings and "a defendant has no constitutional right to a stay simply because a parallel criminal proceeding is in the works." Microfinancial, Inc. v. Premier Holidays Intern., Inc., 385 F.3d 72, 77-78 (1st Cir. 2007). The exercise of discretion is "highly nuanced" and requires balancing the competing interest of the parties, including the civil litigant's right in proceeding expeditiously, the hardship to the defendant, and the public interest. Id.

In this case, the Court determines that the Government has presented sufficient evidence to warrant the issuance of a preliminary injunction prohibiting the offensive acts alleged in its motion, but that final judgment and a decision on the requested issuance of a permanent injunction should be deferred until after the conclusion of the criminal case pending against Defendant Sperl. Other than claiming that she is the object of some sort of conspiracy by the IRS and the IRS is worse than terrorists, Sperl has presented nothing which would suggest that the Government is pressing this litigation in bad faith. To the contrary, the Government has presented substantial evidence that the Defendants have repeatedly engaged in offering unsound tax advice (through consultations, the preparation of taxes, and the offering of newsletters) and evidence that the offer of such advice has continued, notwithstanding the fact that Sperl has been indicted for allegedly committing tax fraud.

In making the determination that the case should continue, although suspended, the Court is cognizant of the potential Fifth Amendment implications for Sperl. However, Sperl has fully

10

participated in this litigation by filing an Answer, responding in detail to the Government's Motion for Summary Judgment, filing a 22-page response with attachments to the Government's motion for an injunction, filing assorted other documents, and testifying freely on her own behalf at the evidentiary hearing. As explained in Microfinancial, such "choices have consequences":

> By failing to invoke h[er] Fifth Amendment privilege, [s]he likely waived the privilege with respect to the subject matter of h[er] deposition testimony for the duration of the proceeding in which that testimony was given. United States v. Gary, 74 F.3d 304, 312 (1st Cir. 1996). A party who chooses to testify in a civil case in spite of the risk that a prosecutor later might seek to use h[er] statements against h[er] in a criminal prosecution involving the same subject matter is hard put to complain about the subsequent denial of a stay. See generally Milton Pollack, Parallel Civil and Criminal Proceedings, 129 F.R.D. 201, 205-06 (1989) (explaining how a party's participation in civil proceedings may affect his position in parallel criminal proceedings). When all is said and done, a stay cannot preserve what a defendant already has surrendered.

Microfinancial, 385 F.3d at 78-79.

Accordingly, the Court will now turn to the Governments' request for an injunction while this case remains pending.

## B. **Propriety of an Injunction**

Certain provisions of the IRS code, including 26 U.S.C. §§7402, 7407 & 7408 expressly authorize the issuance of an injunction. Section 7407 of Title 26 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695,[5] or other fraudulent or deceptive conduct which substantially interferes with the proper administration of the internal revenue laws. Section 7408 of Title 26 authorizes an injunction prohibiting persons from

---

[5]Section 6694 provides penalties for tax return preparers who take an unrealistic position in understating a taxpayer's liability or who engage in willful or reckless conduct with respect to the understatement of the taxpayer's liabilities. Section 6695 provides penalties for tax return preparers who do such things as fail to furnish copies to the taxpayer, fail to sign returns, fail to provide identifying numbers, and fail to file correct information returns.

11

engaging in conduct subject to penalty under 26 U.S.C. § 6700[6] or 26 U.S.C. § 6701.[7] More generally, section 7402(a) of Title 26 provides a district court with jurisdiction to issue "writs and orders of injunction . . . as may be necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a).

Because of the express authorizations for the issuance of an injunction in the tax code, "the traditional requirements for equitable relief need not be satisfied." United States v. Gleason, 432 F.3d 678, 682 (6th Cir. 2008). Instead, the court may issue such an injunction if it finds that the defendant has engaged in conduct subject to penalty under the tax code and that injunctive relief is appropriate to prevent recurrence of such conduct. 26 U.S.C. § 7408(b). In making that determination, a court is to consider such factors as whether the defendants participated in a plan, entity, or arrangement, whether defendants made false or fraudulent statements regarding specific tax matters, whether defendants knew or had reason to know the statements were false or fraudulent, and whether the statements pertained to a material matter. Gleason, 432 F.2d at 682.

Moreover, an injunction in a tax case need not merely prohibit specified types of misconduct or specific violations of the tax code. Instead, the injunction may be broader and prohibit a person from acting as an income tax preparer if the court finds that the preparer has repeatedly engaged in prohibited conduct violative of Section 7407(b), including engaging in any conduct subject to penalty under section 6694 or 6695, or engaging in any fraudulent or deceptive conduct which substantially interferes with the proper administration of the tax laws. 26 U.S.C. § 7407(b); see, United States v.

---

[6] Section 6700 is titled "Promoting abusive tax shelter, etc." and provides penalties for those who organize partnerships, investment plans, and similar devices which promote false or fraudulent statements in relation to the allowability of deductions, credits or the excludability of any income.

[7] Section 6701 provides penalties for aiding and abetting the understatement of tax liability.

12

Gray, 2008 WL 907384 at *3 (W.D. Mich. 2008); United States v. Sonibare, 2006 WL 663450 at *4 (D. Minn. 2006).

Based upon the evidentiary record, the Court finds that Sperl and Thompson, acting through Susanstax, Inc. and other related entities, continually and repeatedly engaged in conduct in violation of 26 U.S.C. §§ 6694 and 6701 by preparing income tax returns which utilized unrealistic positions to understate the taxpayers' liability and by offering advice through Susantax about the ability to take deductions. Such conduct substantially interfered with the administration of the tax laws.

Specifically, the evidence in the record shows that Defendants, acting individually and in concert with each other, undertook a scheme to create or inflate deductions and expenses in an effort to secure larger refunds for taxpayers, even though Defendants knew the taxpayers were not entitled to such deductions and expenses. Among other things, the federal income tax returns prepared by Defendants claimed deductions for business expenses related to customers' purported home-based businesses, even though Defendants knew that the customers had no such businesses and/or engaged in no activity for profit. The evidence also shows that Defendants continued to claim such deductions even after being affirmatively apprised by the customer that the customer was not engaged in a for-profit activity. Defendants also claimed business deductions on income tax returns of customers who engaged in activity for profit, even when Defendants knew the claimed expenses were not "ordinary and necessary expenses" incurred while carrying on activities related to the for-profit activity. The evidence also shows the Defendants fabricated business expenses on customers' income tax returns and that they understated income for certain taxpayers.

Further, through the Susantax Membership Program and newsletters, Defendants advised customers that they could reduce their tax liability by deducting personal expenses they were incurring and that they could "convert" personal expenses, such as children's allowances, to business

13

deductions. Those statements were made without appropriate qualifications, such as that the home-based business needed to have a legitimate business purpose and the intent to make a profit. Defendants also instructed customers on how to "convert" nondeductible personal expenses to lower tax liability while only incurring a "paper" loss.

Defendants knew or had reason to know that such statements and others were false. Defendants held themselves out as tax professionals, bragging that they kept abreast of the tax laws and were more current than other accountants or CPAs. The statements were obviously material since they impacted upon the potential tax liability of the taxpayer and many taxpayers are faced with having to pay back taxes, interest and penalties. Some customers may also face the prospect of criminal prosecution.

Given Sperl's extensive history of offering unfounded and unsupportable tax advice, and that she has done so as recently as April 2008 notwithstanding that fact that she is facing a criminal indictment for tax fraud, the Court finds there is a strong likelihood that she will continue to violate the tax code and endanger the public in relation to the filing of taxes. This possibility exists not only through her actions in a personal capacity, but also by her actions through Susantax, Vision Tax Solution or any other such entity controlled by her. Further, while there is no evidence that her son, Defendant Thompson, has recently engaged in any tax preparation services or recently offered tax advice, there is also no evidence that he would not be inclined to assist his mother in the preparation of tax returns were he asked to do so.

Given the evidence in the record, the Court finds that Defendants have engaged in conduct subject to penalty under 26 U.S.C. §§ 6694, and therefore injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent Defendants, and any business or entity through which they operate, and anyone acting in concert with them, from further engaging in such conduct. The Court further finds

14

that because such conduct was continual and repeated, and because a narrower injunction would not be sufficient to prevent Defendants' interference with the proper administration of the internal revenue laws, the Defendants should be enjoined from further acting as federal tax return preparers under § 7407.

The Court further finds that Defendants repeatedly and continually engaged in conduct subject to penalty under 26 U.S.C. § 6701, and therefore injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent Defendants, and any business or entity through which they operate, from further engaging in such conduct. The Court further finds that Defendants engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief is also appropriate pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a) to prevent recurrence of such conduct.

### III. CONCLUSION

Based upon the foregoing, Plaintiff's Motion for Summary Judgment and Permanent Injunction against Defendants Sperl and Thompson and for Default Judgment and Permanent Injunction against Defendant Susantax, Inc. (Docket Entry No. 70) will be granted in part and denied in part. A default judgment will be entered against Defendant Susantax and all of the Defendants will be enjoined from certain activities until further order of the Court while the criminal case against Defendant Sperl proceeds. The Court will deny the request for final judgment and a permanent injunction against Defendants Sperl and Thompson at this time and the case will be administratively closed. The Court will enter an injunction which enjoins Defendants and anyone acting in concert with them from (1) acting as federal tax return preparers; (2) representing anyone before the Internal Revenue Service; (3) organizing or selling the Susantax Membership Program, or any substantially similar program under another name; and/or (4) engaging in any conduct subject to penalty under the

15

Internal Revenue Code or any conduct that interferes with the administration or enforcement of the internal revenue laws. The R & R (Docket Entry No. 87) will be accepted in part and rejected in part in accordance with the foregoing rulings. .

    An appropriate Order will be entered.

                                                                                       _____
                                                                                       ROBERT L. ECHOLS
                                                                                       UNITED STATES DISTRICT JUDGE